UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THOMAS JAMES WALLACE,

        Plaintiff,         Case No. 1:10-cv-144

v.         Honorable Robert J. Jonker

COUNTY OF CALHOUN et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff Thomas James Wallace presently is incarcerated at the Parnall Correctional Facility. He sues the following Defendants: Calhoun County; 10th District Court Judge (and former Calhoun County Prosecutor) John A. Hallacy; Assistant Calhoun County Prosecuting Attorney Jeffrey A. Kabot; Calhoun County Deputy Guy Picketts; and Kimberly Delaet.

According to Plaintiff's lengthy and hyperbolic statement of facts, Defendants negligently and wrongfully investigated and prosecuted allegations that Plaintiff had engaged in criminal sexual conduct with Mindy Delaet on September 12, September 15 and October 10, 2003. Plaintiff contends that Defendants used improper questioning techniques, displayed an improper photographic lineup, obtained an illegal search warrant, conducted an illegal search, failed to produce *res gestae* witnesses at trial, and coerced a *nolo contendere* plea to one count of third-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520d(1)(a), and three counts of distributing or promoting child sexually abusive materials, MICH. COMP. LAWS § 750.145c(3). On May 24 and June 11, 2003, Plaintiff was sentenced to one term of six years and three months to fifteen years on the CSC conviction and three terms of eleven months to seven years on the child-sexually-abusive-materials convictions.

Plaintiff alleges that the Defendants' conduct in obtaining the convictions demonstrates their propensity toward false allegations, false documentation, conspiracy to violate civil rights, and fraud upon the courts. He contends that the circumstances leading to the acceptance of his plea caused Defendants to file a second criminal complaint against Plaintiff, which ultimately was dismissed. The second complaint arose from Defendant Kimberly Delaet's June 12, 2006 report

to Defendant Picketts that Plaintiff was contacting Delaet's then-17-year-old daughter by mail. On June 12, 2006, Defendant Delaet delivered two letters allegedly written by Plaintiff to Mindy Delaet in May and the first week of June, 2006. According to Plaintiff, the content, handwriting and return address of the letters contained clear indications that the letters were not written by Plaintiff, but Defendants nevertheless continued to investigate and prosecute the offense. Picketts interviewed Mindy Delaet, who stated that the letters were in Plaintiff's handwriting and contained information only Plaintiff would know. Picketts then allegedly spoke with Plaintiff's sister, accusing her of criminal activity and threatening her with prosecution for forwarding the letters to Mindy Delaet. Picketts also allegedly made contact with Assistant Deputy Warden Haas of the Kinross Correctional Facility, advising Haas that Plaintiff had been illegally in contact with Mindy Delaet, in violation of his judgment of sentence. Only after the prison had been contacted did Picketts send the letters for fingerprint analysis, which subsequently found no fingerprint belonging to Plaintiff. Plaintiff contends that it should have been obvious that the Delaets' allegations were false.

Following Pickett's contact with the Michigan Department of Corrections (MDOC), Plaintiff was required to meet with a prison official to answer questions. Plaintiff denied the accusations as slanderous, and reminded the prison official that MDOC outgoing mail policy would have prohibited the mailing of the items. At the time, Plaintiff was housed at a minimum-security facility. Two weeks later, he was transferred to the Southern Michigan Correctional Facility (JMF), a medium-security facility, to answer felony charges of aggravated stalking that had been lodged by Defendants Hallacy and Kabot. As a result of the transfer, Plaintiff had more restrictions on his prison employment and other conditions of confinement, and he allegedly was exposed to a greater risk of harm from higher security prisoners.

At the preliminary examination on the charges, Plaintiff was represented by the same attorney who represented him on his prior felony convictions, and his case was presided over by the same judge. Counsel allegedly encouraged Plaintiff to accept a "generous" plea offer guaranteeing a 19 to 38-month minimum sentence and an agreement to drop a third-habitual-offender enhancement. Plaintiff rejected the offer and observed that the letters obviously were written with the skill and style of a teenager. Plaintiff also directed his attorney to a sample of his own handwriting that did not correspond to the documents. Plaintiff alleges that Defendants had in their possession records of letters received by Plaintiff from the Delaets on June 12 and 21, 2006, demonstrating that the allegations were false. Plaintiff alleges that Hallacy and Kabot's failure to discipline Picketts for pursuing the charge was tantamount to approving Picketts' illegal actions. Plaintiff argues that, in light of the available information, Defendants' plea offer was an attempt to extort a plea from Plaintiff, despite the fact that Defendants lacked probable cause to prove the offense. At Plaintiff's insistence, defense counsel filed motions for production of discovery and for appointment of a handwriting expert. The motions were heard by the court on October 16, 2006, and both were granted. On November 20, 2006, defense counsel argued two additional motions: a motion to compel discovery of the fingerprint analysis and a motion in limine to exclude mention of Plaintiff's prior convictions at trial. Those motions also were granted. On December 8, 2006, following the grant of Plaintiff's motion in limine and receipt of the fingerprint analysis, Defendants dismissed the complaint for lack of evidence.

Plaintiff contends that Defendants' actions constitute malicious prosecution and improper investigation of the charges based on a "pervasive pattern of corruption" and "conspiracy" by Defendants to fabricate false charges and violate Plaintiff's civil rights. (Am. Compl., docket #6

at 23.) For relief, he seeks millions of dollars in compensatory and punitive damages, together with the following preliminary injunctive relief:

- A. Assert jurisdiction over this action;

- B. Order the appropriate protections of this Honorable Court to the Plaintiff with regards to actual retaliation, implied retaliation by the defendants, and/or use by the defendants of their public officers and places of employment to effect any type or inclination of retaliation by any agency of the State of Michigan and it's [sic] employees;

- C. Order to deny defendant Hallacy from effecting the office of District Court Judge, on any judicial bench, or from sitting in judg[]ment of any individual throughout the entire cour[]se of this litigation, order to be effective immediately;

- D. Order to deny defendant Kabot from performing any duty associated with the functions of a legal officer of the court/assistant prosecutor, representing either the state or the federal government in any criminal proceeding throughout the entire course of this litigation, order to be effective immediately;

- E. Order to deny defendant Picketts from fulfilling the functions associated with his employment as a Calhoun County Sheriff's Deputy/Employee, or even assisting any member of any police department, sheriff's department, or law enforcement agen[c]y or agent, state or federal, or assisting any state or federal prosecuting attorney's office in any type of law enforcement investigation throughout the entire course of this litigation, order to be effective immediately;

- F. Order to freeze and/or seizure of all defendants['] current assets, intangible assets and tangible assets, wherein the previous actions by the defendants demonstrate clearly to this Honorable Court by an overwhelming propensity, actions contrlegem [sic], wherein defendants place themselves above the requirements of the clearly established laws, therein attempting to hide or liquidate assets absent this Honorable Court's purviews;

- G. Order to deny the Michigan Department of Corrections from transferring the Plaintiff from his current place of incarceration, Parnall Correctional Facility, regardless of Plaintiff's status as a state prisoner, throughout the entire course of this litigation, order to be effective immediately;

>    H.   Order to deny the defendants from assisting in any manner or association in any new, current, previous, and post-conviction criminal prosecution/ proceeding throughout the course of this litigation, order to be effective immediately;
>
>    I.   Order to deny any prosecutor's office or the attorney general's office of the State of Michigan from using in any manner any statement, affidavits, and/or testimony from the defendants in any post-conviction criminal prosecution/proceeding throughout the entire course of this litigation, order to be effective immediately;
>
>    J.   Order the implementation of a federal investigation and federal prosecution of the defendants on actions of conspiracy to violate civil rights, this order to be effective immediately;
>
>    K.   Grant any such other and further declaratory and equitable relief under the ex parte injunction as this Honorable Court deems appropriate, not merely within the context of this action relevant to malicious prosecution regarding the stalking prosecution by the defendants, but including and therefore not limited to[], any application of constitutional law within Plaintiff's initial state prosecution as described by the Plaintiff herein, as this Honorable Court has an equitable legal stake in seeing truth in justice.

(Am. Compl., docket #6 at 30-32.)

## II. Immunity

Defendant prosecutors Hallacy and Kabot are entitled to absolute immunity from a suit for damages for their conduct in prosecuting the stalking action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*,

870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role of an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Obviously, the acts of bringing criminal charges, making plea offers, and opposing defense motions are part of the prosecutor's role as an advocate. *See Koubriti*, 593 F.3d at 467 (citing cases). Moreover, a prosecutor's action to withhold evidence also falls within the scope of absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 431 n.34; *Koubriti*, 593 F.3d at 467. Accordingly, Defendants Hallacy and Kabot are entitled to prosecutorial immunity from Plaintiff's damages claims.

Although Plaintiff seeks preliminary injunctive relief, he seeks only damages at final disposition. With the exception of his demand for an order directing federal investigation and prosecution of Defendants and his demand that Defendants be enjoined from retaliation, Plaintiff's requests for injunctions are expressly temporary and limited to the course of the litigation. Plaintiff's demand for investigation and prosecution has no merit because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Gonzalez v. Perez*, No. 98-6575, 2000 WL 222584, at *2 (6th Cir. Feb. 14, 2000). Moreover, Plaintiff has not alleged a basis for enjoining Defendants from retaliating against him. The Supreme Court long has recognized that

"'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). The case against him was dismissed by the prosecutor, and Plaintiff has identified no facts that would suggest that he is likely to be subjected to retaliation. Further, the relief requested by Plaintiff – an order prohibiting Defendants from pursuing their employment – exceeds the scope of this Court's authority within the context of this case. Finally, inasmuch as the MDOC is not a party to the action, Plaintiff's demand that the MDOC not transfer Plaintiff to another facility is baseless.

Accordingly, Plaintiff fails to identify a valid demand for injunctive relief and Plaintiff's damages claims against Defendants Hallacy and Kabot will be dismissed because they are immune.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct.

at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. State Actor

Kimberly Delaet is a private citizen who filed a complaint with the Calhoun County Sheriff's Department, alleging that Plaintiff had written letters to her daughter, in violation of his sentence. As previously discussed, in order to state a claim against a defendant, a plaintiff must allege that a constitutional deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351

(1974)). Plaintiff has not presented any allegations by which Kimberly Delaet's conduct in making a criminal complaint could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against Defendant Delaet.

### B. *Heck* Bar

Plaintiff's complaint contains many pages of allegations regarding Defendants' allegedly unconstitutional conduct in the investigation and prosecution of the charges to which Plaintiff pleaded guilty and for which he currently is imprisoned. To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of constitutional rights with respect to the prosecution of the offenses to which he pleaded guilty, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that a state prisoner cannot allege a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations clearly call into question the validity of his convictions. Therefore, to the extent Plaintiff complains about Defendants' conduct underlying his criminal convictions, his claim is barred under *Heck* until his criminal convictions have been invalidated.

### C. Municipal Liability

Plaintiff makes no specific allegations against the County beyond naming the County as a Defendant. Under established law, Calhoun County may only be liable under § 1983 when its policy or custom causes the injury. *Monell*, 436 U.S. at 694. Respondeat superior or vicarious liability will not attach under § 1983. *Id.* at 694-695; *see also City of Canton v. Harris*, 489 U.S. 378, 386 (1989). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe County*, 520 U.S. 781, 802-03 (1997).

The Court will assume without deciding that the elected prosecutor is the policy-maker for the county with respect to prosecutions of criminal defendants. Defendant Hallacy was, at the time of the alleged malicious prosecution, the elected prosecutor for Calhoun County. Thus, the court looks to the allegations in Plaintiff's amended complaint to determine whether Plaintiff has alleged that Hallacy established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom. A "policy" includes a "policy statement, ordinance, regulation, or decision

officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. Plaintiff has not asserted that there is an official policy.

Plaintiff also has not identified a custom. The Sixth Circuit has explained that a "custom"

> for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe*, 103 F.3d at 507 (citations and quotations omitted). Notwithstanding his hyperbolic language, Plaintiff merely declares that Defendant Hallacy should have recognized that the letters were not written by Plaintiff and should have declined to prosecute absent additional evidence corroborating Mindy and Kimberly Delaet. Plaintiff's allegations do not show that Hallacy had a custom of filing charges without adequate investigation. Plaintiff's allegation that Hallacy was negligent in his situation does not show that the prosecutor took "a course of action deliberately chosen from among various alternatives." *Doe*, 103 F.3d at 507. Morever, mere negligence in failing to take preventive measures is insufficient to show § 1983 liability. *Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988). In other words, allegations that there were negligent acts by the prosecutor as the policymaker for Calhoun County, without a showing that the acts were the result of a policy or custom, do not support liability under § 1983. *Molton*, 839 F.2d at 246. Thus, Plaintiff has failed to allege that Hallacy, as final policymaker for the County in the area of criminal prosecutions, had a policy or custom that caused Plaintiff to be deprived of a constitutional right.

### D. Collateral Estoppel

Plaintiff alleges that Defendants maliciously prosecuted him for stalking in the absence of any evidence. "[T]he state of malicious prosecution is somewhat uncertain in this circuit." *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 308-312 (6th Cir. 2001) (discussing confusion in the wake of *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001) (interpreting *Albright v. Oliver*, 510 U.S. 266 (1994), in a manner at odds with a prior Sixth Circuit holding in *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999))). Based on these cases, it is uncertain whether a malicious prosecution action survives independent of an illegal seizure where, as here, Plaintiff was already in custody on prior convictions.

Regardless, however, it is certain that a claim of malicious prosecution fails when there was probable cause to prosecute. *Darrah*, 255 F.3d at 311; *see also Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007). Moreover, a malicious prosecution action is collaterally barred by a prior state determination of probable cause that has preclusive effect. *See Darrah*, 255 F.3d at 311. The Supreme Court has held that state law controls whether a state determination of probable cause at a preliminary hearing has preclusive effect. *Id.* (citing *Haring v. Prosise*, 462 U.S. 306, 313 (1983)). Under Michigan law, issue preclusion applies when (1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.* (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich.1990)). Applying Michigan law, the Sixth Circuit has held that a finding of probable cause at a preliminary hearing ordinarily forecloses

"relitigation of that finding in a subsequent § 1983 action." *Coogan v. City of Wixom*, 820 F.2d 170, 174-75 (6th Cir.1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir.2001); *see also Buttino v. City of Hamtramck*, 87 F. App'x 499, 503 (6th Cir. 2004). Additionally, several Michigan courts have held that collateral estoppel precludes a plaintiff in a civil case from relitigating claims that were previously addressed in criminal proceedings. *Webb v. City of Taylor*, No. 236153, 2002 WL 31947931, at *3-4 (Mich. Ct. App. Dec. 3, 2002); *In re Forfeiture of $1,159,420*, 486 N.W.2d 326, 333 (Mich. Ct. App. 1992); *Knolblauch v. Kenyon*, 415 N.W.2d 286, 292 (Mich. Ct. App. 1987).

It is clear from Plaintiff's amended complaint that Plaintiff appeared at a preliminary examination, following which the state court found probable cause. (Am Compl., docket #6 at 21.) Plaintiff suggests, however, that his claim is not collaterally estopped because the evidence presented at the preliminary examination was "false," and Defendants would have known it was false if they had obtained a fingerprint report to corroborate the complainant's allegations. In *Darrah*, 255 F.3d at 311, the court held that, when a plaintiff alleges that the defendant presented intentionally false evidence, the finding of probable cause at the state preliminary examination will not collaterally estop a plaintiff's § 1983 claim of malicious prosecution. The *Darrah* court reasoned that, in those circumstances, the question before the state court was different that the question in issue in the civil rights action: the state court considered whether the evidence presented was sufficient to establish probable cause, whereas the plaintiff in his civil rights action alleged that detectives had knowingly provided false evidence at the preliminary hearing. The court therefore held that the "identity of the issues" requirement was not satisfied. *Id.* Here, in contrast, Plaintiff acknowledges that Mindy Delaet identified the handwriting on the letters as Plaintiff's. He merely alleges that the

complainant's evidence was not credible and was insufficient to support probable cause without corroborating evidence. The Sixth Circuit has recognized that a plaintiff cannot demonstrate that the evidence presented to a judge was false on the basis that the prosecutor "left out" other evidence that may have been exculpatory. *See Flowers v. City of Detroit*, 306 F. App'x 984, 988 (6th Cir. 2009) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 173 (6th Cir. 1999), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). As a consequence, the issue before the state court was identical to the issue in the instant action: whether the evidence that was presented was sufficient to demonstrate probable cause. Because probable cause was found at the preliminary examination, Plaintiff is collaterally estopped from bringing his malicious prosecution claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     April 14, 2010                  /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          UNITED STATES DISTRICT JUDGE